# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRCT OF ALABAMA

DEMETRIUS FRAZIER,      )
     )
     Plaintiff,      )
     )
v.      )      No. 1:25-cv-00024-JB-N
     )
TERRY RAYBON,      )
Warden, Holman Correctional      )
Facility,      )
     )
and      )
     )
HEIDI WASHINGTON,      )
Director, Michigan Department      )
of Corrections,      )
     )
     Respondents.      )

## <u>RESPONDENT RAYBON'S MOTION TO DISMISS</u>

Steve Marshall
*Attorney General*

Lauren A. Simpson
*Deputy Attorney General*
*Counsel for Respondent Raybon*

State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36130-0152
Tel: (334) 242-7300
January 22, 2025      Lauren.Simpson@AlabamaAG.gov

## TABLE OF CONTENTS

Factual and Litigation History ..............................................................4

    A.    Criminal History..................................................................4

    B.    Convictions and Appeal .......................................................5

    C.    Executive Agreement and Further Litigation.......................7

    D.    Frazier's Current Execution Litigation .............................10

Reasons the Petition Should Be Dismissed ...........................................11

    I.    The Petition is Untimely. ..................................................11

    II.    The Present Claim Was Not Exhausted in State Court.......15

    III.    Frazier Lacks a Cognizable Right to Choose Which Sentence He Serves First. ........................................................19

    IV.    Executive Agreements Are a Valid Alternative to the IAD...............23

    V.    The Doctrine of Laches Counsels Dismissal. ....................26

    VI.    Law and Justice Do Not Require Relief.............................31

Conclusion ...........................................................................................33

Certificate of Service ...........................................................................34

COMES NOW Respondent Terry Raybon and moves this Honorable Court to dismiss Demetrius Frazier's 28 U.S.C. § 2241 petition for habeas relief.

Frazier is scheduled to be executed on **February 6, 2025**, for the murder of Pauline Brown in November 1991. He has been in the physical custody of the Alabama Department of Corrections since 2011, when Governor Robert Bentley of Alabama and Governor Rick Snyder of Michigan entered an executive agreement providing for his transfer to Alabama to await execution. DE1-8:2. Now, three weeks before his execution—and more than thirteen years after his return to Alabama—Frazier initiated the instant litigation challenging the legality of the agreement. DE1.

Why Frazier decided to wait until January 16 to file his habeas petition is unclear. Indeed, he communicated to Michigan Governor Gretchen Whitmer on November 14, 2024, that he "plans to pursue habeas relief, under 28 U.S.C. § 2241, by filing suit against Alabama authorities." DE1-12:5. Per his petition, Governor Whitmer declined to act on December 10. DE1:8. The only conclusion Respondent Raybon can draw is that this is yet another attempt to sandbag the State of Alabama with meritless litigation in an effort to stop an execution.

This Court should dismiss Frazier's habeas petition for six reasons.

***First***, this petition is barred by the one-year statute of limitations for habeas petitions by prisoners in custody pursuant to state-court judgments. 28 U.S.C. § 2244(d)(1); *see Peoples v. Chatman*, 393 F.3d 1352, 1353 (11th Cir. 2004).

2

*Second*, Frazier's claim was not exhausted in state court. While § 2241 does not specifically contain an exhaustion requirement, Supreme Court and Eleventh Circuit law require Frazier to exhaust his state remedies. *E.g.*, *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005); *Dill v. Holt*, 371 F.3d 1301, 1302 (11th Cir. 2004).

*Third*, Frazier's claim fails because "a prisoner does not have a right cognizable in habeas corpus to complain about the order of his prosecutions or sentences." *Moody v. Warden Holman CF*, 887 F.3d 1281, 1289 (11th Cir. 2018); *accord Remeta v. Singletary*, 85 F.3d 513 (11th Cir. 1996).

*Fourth*, there was nothing illegal about the Alabama Governor's and Michigan Governor's use of an executive agreement to transfer Frazier to Alabama. *See Pitsonbarger v. Gramley*, 141 F.3d 728, 734 (7th Cir. 1998).

*Fifth*, the petition is due to be dismissed pursuant to the doctrine of laches.

*Sixth*, the Court should exercise its "equitable discretion" to deny relief regardless of the petition's merit because "law and justice" do not "require" prohibiting Alabama from carrying out Frazier's uncontested death sentence. *Brown v. Davenport*, 596 U.S. 118, 132 (2022). It would be particularly unjust to grant relief on the theory of this petition, which would effectively reward Frazier, in comparison to every other capital murderer facing a death sentence in Alabama, for having committed another murder in Michigan.

3

## FACTUAL AND LITIGATION HISTORY

**A.    Criminal History**

Demetrius Frazier is a sexual predator.

On September 1, 1991, he broke into the Detroit home of Jacqueline Gresham through a window and, armed with a knife and wearing Gresham's son's T-shirt over his face as a makeshift mask, confronted her. Fearing for the safety of the children in the house, Gresham cooperated with Frazier, who raped her multiple times over the course of the evening, orally penetrated her, and finally ejaculated onto her buttocks when he could not complete his last vaginal rape. As he left, he told Gresham that he had done this because of a bet, and he had won. Ex. A at 8-9.

Following this attack, Frazier apparently left Michigan for California before ending up in Birmingham, Alabama. Ex. A at 13. On November 26, 1991, he saw a light in the ground-floor apartment of Pauline Brown, removed the screen, and let himself in. After searching the house for cash, he awakened Brown and raped her at gunpoint. While he was raping her, she begged him not to kill her, but he shot her in the head. Before leaving with less than $100, Frazier took a break to eat some bananas in Brown's kitchen. *Ex parte Frazier*, 758 So. 2d 611, 613 (Ala. 1999).

Back in Detroit, in the early morning hours of March 8, 1992, Frazier forced fourteen-year-old Crystal Kendrick into a vacant house at gunpoint. The child undressed at his direction, but when Frazier put down the gun to undo his pants, she

4

bolted. Frazier grabbed the gun and chased Kendrick across the street, then shot her in the head. A passing driver found her naked body. Ex. A at 3.

When Frazier was arrested in Detroit a few days later, he had numerous other cases pending; including the cases described above, he faced one count of second-degree murder, one count of felony murder, *fifteen* counts of first-degree criminal sexual conduct, one count of assault with intent to rape, four counts of breaking and entering, one count of robbery not armed, three counts of felony firearm possession, one count of possession of a concealed weapon, and multiple counts of being a habitual offender in the second degree. Ex. A at 10-11. While he was being interrogated, Frazier confessed to Brown's murder. Law enforcement in Detroit contacted the Birmingham Police Department, and a Birmingham detective traveled to Michigan to interrogate Frazier. At that time, Frazier made a recorded statement again confessing to Brown's murder. *Ex parte Frazier*, 758 So. 2d at 612-13.

## B.     Convictions and Appeal

In March 1993, Frazier was convicted of second-degree murder, felony murder, and felony firearm possession in the case concerning Crystal Kendrick and was given two life sentences. Ex. A at 2. The second-degree murder conviction was later vacated. *Id.* at 11; DE1-1:2. Frazier was then convicted of his crimes against Jacqueline Gresham in October 1993 and given another two life sentences, plus a sixty-year

5

sentence for armed robbery. Ex. A at 7; DE1-2. Currently, Frazier has four life sentences and a sentence of sixty to ninety years in Michigan. DE1-10.

On December 7, 1993, Frazier was indicted by a Jefferson County grand jury for three counts of capital murder. DE1-3. Jefferson County requested that Frazier be sent to Alabama in November 1994, DE1-5:2, and in April 1995, Frazier signed an Interstate Agreement on Detainers (IAD) form indicating that he requested final disposition of his Alabama charges; he also asked for counsel to be appointed, DE1-4. Michigan agreed to transfer Frazier in May, and the Jefferson County district attorney agreed to accept temporary custody of him in June. DE1-5:3. Frazier was picked up in September 1995 to stand trial in Birmingham. *Id.* at 4.

Frazier was convicted of capital murder and sentenced to death. *Ex parte Frazier*, 758 So. 2d at 613-14. In October 1996, Jefferson County indicated that they would like to retain custody of Frazier during the pendency of his appeals, estimated to take ten to fourteen years. DE1-6. Still, Frazier was returned to Michigan that month. DE1-7.

The Alabama Court of Criminal Appeals affirmed Frazier's capital conviction and death sentence in January 1999, *Frazier v. State*, 758 So. 2d 577 (Ala. Crim. App. 1999), and the Alabama Supreme Court likewise affirmed that December, *Ex parte Frazier*, 758 So. 2d 611. The United States Supreme Court denied certiorari in October 2000. *Frazier v. Alabama*, 531 U.S. 843 (2000) (mem.). Frazier's state

postconviction proceedings concluded on January 30, 2004. *Ex parte Frazier*, No. 1022171 (Ala. Jan. 30, 2004).

Through counsel from the Federal Defenders for the Middle District of Alabama—the organization that currently represents him—Frazier filed a 28 U.S.C. § 2254 petition in the Northern District of Alabama five days later. Petition, *Frazier v. Bouchard et al.*, 2:04-cv-00211 (N.D. Ala. Feb. 4, 2004), ECF No. 1. At that time, Frazier was housed at Alger Correctional Facility in Munising, Michigan. His counsel were certainly cognizant of his issues with extradition, as one of the claims raised was that trial counsel had been ineffective for failing to "investigate the circumstances of" his extradition to Alabama to stand trial. *Id.* at 16. The Eleventh Circuit ultimately affirmed the denial of habeas relief on October 25, 2011. *Frazier v. Bouchard*, 661 F.2d 519 (11th Cir. 2011), and the Supreme Court denied certiorari in October 2012, *Frazier v. Alabama*, 568 U.S. 833 (2012) (mem.), concluding Frazier's conventional appeals.

## C.    Executive Agreement and Further Litigation

In October 2011, Governor Rick Snyder of Michigan and Governor Robert Bentley of Alabama entered into an executive agreement whereby Frazier would be transferred back to Alabama "to be safely housed on death row in the custody of the Alabama Department of Corrections, as prescribed by law, until such time as he is executed[.]" DE1-8:2. The executive agreement noted that Frazier had been

convicted of capital murder in Jefferson County "and is needed for imposition of sentence of death and any subsequent appeals and federal habeas corpus petitions as allowed by law." *Id.* Should Frazier's capital murder conviction or death sentence be overturned, he would be returned to Michigan. *Id.* Governor Bentley signed on October 14, 2011, and Governor Snyder signed on October 20. *Id.* at 3.

On October 21, 2013—two years after the executive agreement—Frazier filed a 42 U.S.C. § 1983 complaint in the Middle District of Alabama, again through the Federal Defenders, challenging Alabama's method of execution. Complaint, *Frazier v. Thomas*, 2:13-cv-00781 (M.D. Ala. Oct. 21, 2013), ECF No. 1. That complaint did not mention Michigan.

Alabama moved for Frazier's execution date to be set in September 2014, but on the State's motion, the matter was held in abeyance in 2015 pending the outcome of *Glossip v. Gross*. *Ex parte Frazier*, No. 1981111 (Ala. Mar. 27, 2015). Frazier's response to that execution motion, also through the Federal Defenders, did not mention Michigan. Meanwhile, Frazier intervened in a § 1983 method-of-execution challenge brought by another Federal Defenders–represented Alabama inmate, which would not be settled until July 2018. Motion to Intervene, *In re: Alabama Lethal Injection Litigation*, 2:12-cv-00316 (M.D. Ala. Oct. 21, 2013), ECF No. 23.

In January 2017, Frazier filed a successive state postconviction petition in Jefferson County based on *Hurst v. Florida*, the denial of which was affirmed. *Frazier*

*v. State*, CR-17-0372 (Ala. Crim. App. June 29, 2018); *cert. denied*, *Ex parte Frazier*, No. 1171020 (Ala. Nov. 16, 2018). Still no mention of Michigan.

Nine days after *In re: Alabama Lethal Injection Litigation* was settled, Frazier—again through the Federal Defenders—initiated another § 1983 action, this time in this Court, concerning his transfer from Michigan. Complaint, *Frazier v. Whitmer et al.*, 1:18-cv-00323 (S.D. Ala. July 20, 2018), ECF No. 1. Therein, Frazier discussed the executive agreement, including some factual allegations largely identical to those in his present petition, *compare id.* at 6-7 *with* DE1:6-7. He did not argue that the executive agreement was illegal, but rather that his equal protection rights were being violated because he, a black man, had been sent to Alabama to face execution, whereas Clarence Ray, Jr., a white man, had not been sent to California to face a death sentence. Complaint at 9-10. In March 2019, the parties jointly moved for a stay of proceedings "to explore a potential resolution to this case," Joint Motion for Stay of Proceedings, *Frazier v. Whitmer et al.*, 1:18-cv-00323 (S.D. Ala. Mar. 12, 2019), ECF No. 19, which was granted. On June 6, Frazier voluntarily dismissed the complaint without specifying his rationale. Notice of Voluntary Dismissal, *Frazier v. Whitmer et al.*, 1:18-cv-00323 (S.D. Ala. June 6, 2019), ECF No. 22.

In November 2018, Frazier filed a successive § 2254 petition in the Northern District through the Federal Defenders, again challenging the non-applicability of *Hurst* to his case. The petition was denied in June 2019, Order, *Frazier v. Dunn*,

2:18-cv-01899 (N.D. Ala. June 18, 2019), and the Eleventh Circuit denied a COA, *Frazier v. Comm'r, Ala. Dep't of Corr.*, 19-12521, 2019 WL 11741628 (11th Cir. Aug. 2, 2019).

### D.    Frazier's Current Execution Litigation

After the Supreme Court declined to consider his successive § 2254 petition in February 2020, Frazier's litigation ceased. He had elected nitrogen hypoxia as his method of execution in June 2018, and Alabama did not announce a hypoxia protocol until August 2023. On October 18, 2024, Alabama again moved for Frazier's execution date to be set. DE1-11. Frazier's response to that motion in the Alabama Supreme Court made no argument about the legality of his transfer to Alabama.

Instead, on November 14, the Federal Defenders sent a letter to Michigan Governor Gretchen Whitmer arguing that Frazier's "presence in an Alabama prison is unlawful under MCL 769.2a" and that his execution "would violate Article 4, § 46, of the Michigan Constitution." DE1-12:2. The Federal Defenders counseled Governor Whitmer to invoke the Extradition Clause (U.S. CONST. art. IV, § 2, cl. 2) and to notify Alabama that she did not consent to Frazier's execution "because he is in the legal custody of" the Michigan Department of Corrections. *Id.* at 5-6. They also informed Governor Whitmer that "Mr. Frazier plans to pursue habeas relief, under 28 U.S.C. § 2241, by filing suit against Alabama authorities while you pursue his return under the Extradition Clause." *Id.* at 5. Frazier's attorneys recognized the

10

Governor's objection "would be of great help" in his pursuit of habeas relief, *id.* at 6, for in the Eleventh Circuit, one who violates the laws of two states "cannot choose…which sentence he serves first, as long as the first sovereign consents to have the second sovereign take custody," *id.* at 6 n.15 (quoting *Moody*, 887 F.3d at 1291). Frazier alleges that Governor Whitmer declined to act on his request on December 10, 2024. DE1:8.

On December 16, 2024, the Alabama Supreme Court authorized Frazier's execution. DE1-13. On January 7, Governor Kay Ivey scheduled the execution to begin on February 6, 2025. DE1-14.

Meanwhile, instead of commencing § 2241 proceedings, Frazier filed a § 1983 complaint in the Middle District contesting the constitutionality of the nitrogen hypoxia protocol. Complaint, *Frazier v. Hamm et al.*, 2:24-cv-00732 (M.D. Ala. Nov. 15, 2024), ECF No. 1. That litigation remains pending in the district court; an evidentiary hearing and oral argument on Frazier's motion for preliminary injunction (filed at noon on January 15 only after the district court gave him that deadline) is scheduled for January 28. Order, *Frazier v. Hamm et al.*, 2:24-cv-00732 (M.D. Ala. Jan. 15, 2025), ECF No. 23.

<div align="center">REASONS THE PETITION SHOULD BE DISMISSED</div>

## I.    The Petition is Untimely.

Frazier's § 2241 petition is due to be dismissed is because it is untimely.

At the outset, although Frazier is unquestionably in custody pursuant to the judgments of state courts in Michigan and Alabama, his petition is not barred by the ban on unauthorized second or successive petitions in 28 U.S.C. § 2244(b). Frazier is correct that in the Eleventh Circuit, "challenges to the execution of a sentence, rather than the validity of the sentence itself, are properly brought under § 2241." DE1:9 (quoting *Antonelli v. Warden*, 542 F.3d 1348, 1352 (11th Cir. 2008)).

However, Frazier's petition was filed outside the limitations period. Section 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent

judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The Eleventh Circuit has held that the one-year statute of limitations in § 2244(d) applies to a § 2241 petition brought by an inmate, like Frazier, imprisoned pursuant to a state court judgment. *Peoples*, 393 F.3d at 1353; *see Medberry v. Crosby*, 351 F.3d 1049, 1058-62 (11th Cir. 2003) (as there is single habeas corpus remedy for state prisoners governed by both § 2241 and § 2254, remedy authorized by § 2241 is subject to restrictions of § 2254); *see also Allen v. White*, 185 F. App'x 487, 490 (6th Cir. 2006) (quoting *Peoples* and finding that if state inmate's § 2254 petition were converted to § 2241 petition, "the petition would be untimely under the one-year statute of limitations"). This was discussed in a recent unpublished Eleventh Circuit decision, *Sneed v. Secretary, Florida Department of Corrections*:

> Pursuant to 28 U.S.C. § 2244(d)(1), "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." We have held that the one-year statute of limitations applies to a § 2241 petition brought by a person imprisoned pursuant to a state court judgment. *See Peoples v. Chatman*, 393 F.3d 1352, 1353 (11th Cir. 2004) (holding that a state prisoner's § 2241 petition was subject to the one-year statute of limitations in § 2244(d)(1)).
>
> Sneed was in custody pursuant to a state court judgment. *See Clements v. Florida*, 59 F.4th 1204, 1206 (11th Cir. 2023) ("[C]ustody generally means physical detention or confinement."). Thus, Sneed's § 2241 petition was subject to the § 2244(d)(1) one-year statute of limitations. 28 U.S.C. § 2244(d)(1); *see Peoples*, 393 F.3d at 1353.

22-13323, 2023 WL 8712118, at *2-3 (11th Cir. Dec. 18, 2023) (footnote omitted).

13

Looking at the § 2244(d)(1) exceptions, none apply. Exception (A) is inapplicable because the direct appeal of Frazier's capital conviction was final in December 1999 when the Alabama Supreme Court ruled. Exception (B) is likewise inapplicable because Frazier has identified no State-created impediment that has prevented him from filing this petition since October 2011. Exception (C) does not come into play because the right Frazier asserts is not one newly recognized by the Supreme Court and made retroactive to cases on collateral review.

This leaves exception (D), but Frazier has no help there. The event constituting the factual basis for his claim that the executive agreement between Governors Bentley and Snyder was unconstitutional occurred on October 20, 2011, DE1-8:3, and Frazier alleges that he was permitted to contact the Federal Defenders around October 31, 2011, when he was returned to Alabama, DE1:7. Frazier has not alleged that the executive agreement was kept secret from him or that he could not reasonably have learned of it until some point within the previous twelve months. Nor *could* he allege such, as he initiated a § 1983 action centered on the executive agreement in July 2018, as set forth above. Moreover, it would do Frazier no good to argue that his claim only became ripe when the State of Alabama moved for his execution in October 2024. The State first moved for Frazier's execution in September 2014, so he has been on notice for at least the last decade that (1) there is an executive

14

agreement keeping him in Alabama to be executed, and (2) Alabama intends to carry out his sentence.

Thus, as Frazier's § 2241 petition was filed outside the statutory limitations period, it is due to be dismissed.

## II.    The Present Claim Was Not Exhausted in State Court.

Frazier's petition is also due to be dismissed for lack of exhaustion.

Section § 2241 does not contain a specific exhaustion requirement. However, Supreme Court and Eleventh Circuit law require state inmates to exhaust their claims in state court before pursuing federal habeas. The Middle District of Alabama has succinctly noted as much:

> The Court denied Marshall's petition on procedural grounds—he failed to exhaust his available state remedies. While Marshall is correct that 28 U.S.C. § 2241 does not contain an exhaustion requirement, the law requires Marshall to exhaust his state remedies. *See Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (all habeas corpus actions "require a petitioner to fully exhaust state remedies"); *Dill v. Holt*, 371 F.3d 1301, 1302 (11th Cir. 2004) ("Although the statutory language of § 2241 itself does not contain a requirement that a petitioner exhaust state remedies, we have held that the requirements of § 2254—including exhaustion of state remedies—apply to a subset of petitioners to whom § 2241(c)(3) applies: those who are "in custody pursuant to the judgment of a State court."); *Medberry v. Crosby*, 351 F.3d 1049, 1059 (11th Cir. 2003); *Thomas v. Crosby*, 371 F.3d 782, 812 (11th Cir. 2004) (Tjoflat, J. concurring) ("Among the most fundamental common law requirements of § 2241 is that petitioners must first exhaust their state court remedies.")

*Marshall v. Richie*, 2;18-cv-00808, 2019 WL 8886220, at *1 (M.D. Ala. Apr. 29, 2019). Frazier, a state inmate, contends that he is entitled to relief under § 2241(c)(3), DE1:3, and thus, this exhaustion requirement applies to him.

Frazier has been represented by the Federal Defenders in all of his federal litigation since 2011. As discussed above, he also filed a successive state postconviction petition in 2017 about the retroactivity of *Hurst v. Florida* and appealed it. In that matter, he was represented primarily by Thomas Goggins, a solo practitioner in Montgomery, but also by the Equal Justice Initiative. In short, Frazier has had competent counsel for the last thirteen years and could have brought the issues in his § 2241 petition in another state action. He could have allowed Alabama state courts or Michigan state courts to consider the applicability of the state laws he cites throughout his petition to the facts of his case. He did not. Therefore, the claim in Frazier's § 2241 petition was not exhausted.

To overcome procedural default, a petitioner must demonstrate either (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Carruth v. Comm'r, Ala. Dep't of Corr.*, 93 F.4th 1338, 1355 (11th Cir. 2024) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). For the reasons set forth in this motion, Frazier cannot satisfy this requirement; in particular,

16

he cannot show that failure to consider his claim will result in a fundamental miscarriage of justice.

Moreover, the number of state statutes Frazier cites makes it all the more evident that he should have first brought this claim in state court rather than ask this Court to decide matters of state law. *See* DE1:10-14. And a review of his argument shows that Frazier's interpretation of state law is questionable:

- In paragraph 57, Frazier claims that his presence in Respondent Raybon's custody violates the IAD and sections 15-9-81(V)(d) and 15-18-81(V)(e) of the Code of Alabama. Frazier's transfer was made by executive agreement, as discussed below, not through the IAD. (He also meant § 15-9-81(V)(e), not § 15-18-81(V)(e).)

- In paragraph 59, Frazier claims that because of the nature of his crimes, Michigan law requires that he serve his sentences in "a state correctional facility or a county jail," MICH. COMP. LAWS § 769.2a. He claims in paragraph 60 that this "substantively limits" Michigan's authority to let him serve his sentences "anywhere but a Michigan prison or county jail." But section 769.2a(2) explains, "As used in this section, 'state correctional facility' means a facility or institution which is maintained and operated, or contracted for, by the department of corrections, other than a community corrections center, halfway house, resident home, prison farm housing unit, camp, the Cassidy lake technical school, or the Michigan reformatory trustee division, located at Ionia." This statute keeps the inmate out of certain lower-security facilities; it has nothing to do with a situation where an inmate has sentences to serve in two different states. Moreover, section 780.5 gives the Governor of Michigan the right to enter into executive agreements with other states to transfer inmates, meaning that they would not be housed in "a Michigan prison or county jail." Frazier thus applies section 769.2a out of context, and his overreading would nullify section 780.5.[1]

---

1. Further, the Michigan Department of Corrections has an Intergovernmental Agreement with the Federal Bureau of Prisons that allows MDOC inmates to be

- In paragraphs 62-65, Frazier claims that the executive agreement violates Michigan constitutional law. He reads Article 3, section 5—"Subject to provisions of general law, this state…may enter into agreements…with any one or more of the other states, the United States, the Dominion of Canada, or any political subdivision thereof unless otherwise provided in this constitution."—to invalidate the 2011 executive agreement with Alabama because Article 4, section 46, states, "No law shall be enacted providing for the penalty of death." This interpretation is tenuous at best. The executive agreement did not enact any law in Michigan, and the fact that Alabama has the death penalty does not mean that the Michigan constitution forbade his transfer.

Of course, these are matters of state law that would be best left to the interpretation of state judges, but rather than give any state jurist an opportunity to weigh in, Frazier proceeded to federal habeas and asks this Court to arbitrate his state-law issues. While Frazier's petition occasionally dons the language of constitutional rights, the purportedly federal "liberty interest" at stake, DE1:11-12, is premised entirely on Frazier's questionable reading of section 769.2a of Michigan Compiled Laws. In cases like this one (particularly where Frazier raises the proper construction of the law of *two* states), the doctrine of exhaustion serves the "important interests of federalism" and "comity" by affording the States "the first opportunity to address and correct alleged violations." *Thomas*, 371 F.3d at 812-13 (Tjoflat, J. concurring). Because Frazier's claim was not exhausted, the petition is due to be dismissed.

---

housed in federal correctional facilities if necessary for safety and security. This statute has never been used to challenge this agreement.

### III. Frazier Lacks a Cognizable Right to Choose Which Sentence He Serves First.

Frazier is due no relief because he does not have a cognizable right to challenge the order of his sentences. He claims that he is entitled to habeas relief because Alabama and Michigan used an executive agreement rather than the IAD, allegedly in violation of various state and federal laws, to send him to Alabama to be executed. But "a prisoner does not have a right cognizable in habeas corpus to complain about the order of his prosecutions or sentences." *Moody*, 887 F.3d at 1289

*Moody v. Warden Holman CF*, a 2018 decision from the Eleventh Circuit, is instructive. In 1989, Moody mailed four package bombs; two detonated, killing Eleventh Circuit Judge Robert Vance and attorney Robert Robinson. *Id.* at 1283. He was tried first in federal court, convicted of seventy-one charges, and sentenced to seven consecutive life sentences, plus a concurrent term of four hundred years. *Id.* He was then tried in Jefferson County, and his custody was secured by a writ of habeas corpus ad prosequendum, which "also contemplated that Alabama authorities would return" Moody to federal custody following the trial. *Id.*

Moody was convicted in 1997 and sentenced to death. *Id.* at 1284. While the U.S. Marshal for the Southern District of Alabama filed a detainer with the Alabama Department of Corrections in 1998 requesting notification prior to Moody's release from ADOC custody, the detainer did not seek Moody's return. *Id.* Moody spent the next two decades at Holman Correctional Facility, never returning to a federal

19

penitentiary. *Id.* In a § 2241 petition, he argued that he was entitled to serve out his federal sentences first and that ADOC had wrongfully detained him. *Id.* The United States, however, "did not object to Alabama keeping custody of Mr. Moody for the purpose of carrying out the death sentence[.]" *Id.* at 1290.

While the Eleventh Circuit found that Moody had Article III standing to bring his claim, *id.* at 1285-87, the court explained that he did not have a cognizable right to demand that the United States take custody of him, *id.* at 1292. In so doing, the court pointed to its own case law:

> Decided about 20 years ago, *Remeta v. Singletary*, 85 F.3d 513 (11th Cir. 1996), involved a Florida prisoner who committed a series of murders in Florida and Kansas. He pled guilty in Kansas to three homicides and received several consecutive life sentences. He was then extradited to Florida, where he was convicted and sentenced to death for another murder occurring there. *See id.* at 515. After pursuing post-conviction relief in Florida, he filed a petition for a writ of habeas corpus in federal court, asserting among other things that under Florida's version of the Interstate Agreement on Detainers Act he could not be executed and had to be returned to Kansas. His argument was based in part on the fact that he had signed an extradition waiver which provided that he would be returned to Kansas following the criminal proceedings in Florida. *See id.* at 516-17.
>
> We assumed that the waiver was not knowing and intelligent, but held that the prisoner was not entitled to habeas relief even if Kansas had not expressly agreed to leave him in Florida's custody: "Even if we were to assume that Florida has failed to honor its statutory commitment to Kansas under the IAD,…this appears to be a matter exclusively between Florida and Kansas. The resolution of an IAD dispute between these two states (if such a dispute exists) may necessitate that Kansas seek an injunction to force Florida to abide by its agreement, return [the prisoner], and allow him to serve out his Kansas sentence. This is not a matter for federal habeas review." *Id.* at 519.

 *Remeta* is consistent with a number of Former Fifth Circuit cases[2]—many of which were cited by the district court—explaining that a person who has violated the laws of two sovereigns cannot choose (or have a federal court direct) which sentence he serves first, as long as the first sovereign consents to have the second sovereign take custody. *See Causey v. Civiletti*, 621 F.2d 691, 692-94 (5th Cir. 1980); *DeLong v. United States*, 474 F.2d 719, 720 (5th Cir. 1973); *Chunn v. Clark*, 451 F.2d 1005, 1006 (5th Cir. 1971); *Montos v. Smith*, 406 F.2d 1243, 1245 (5th Cir. 1969); *Zerbst v. McPike*, 97 F.2d 253, 254 (5th Cir. 1938). *Remeta* is also in accord with the general law in our sister circuits. *See, e.g.*, *Jeter v. Keohane*, 739 F.2d 257, 258 (7th Cir. 1984); *Williams-El v. Carlson*, 712 F.2d 685, 686 (D.C. Cir. 1983).

 Here the United States does not object to Alabama retaining custody of Mr. Moody for the purpose of carrying out the death sentence. Under the circumstances, Mr. Moody does not have a cognizable right to demand otherwise, and the statutes he relies on—18 U.S.C. §§ 3585(a) & 3621(c)—do not purport to remove or eliminate the United States' authority to decide whether a federal prisoner will serve his subsequently-imposed state sentence first. *Cf. Finley v. United States*, 266 F.2d 29, 29 (5th Cir. 1959) (rejecting the claim that a federal prisoner could not be sent to state court for trial on pending state charges: "In the absence of objections from the United States, the probationer cannot object. The question is one of comity between the United States and the State of Georgia. The sovereign having prior jurisdiction and custody may waive that right and permit another sovereign to proceed.").

*Id.* at 1291-92 (citations edited); *see also Weathers v. Henderson*, 480 F.2d 559, 559-60 (5th Cir. 1973); *Pitsonbarger v. Gramley*, 141 F.3d 728, 734 (7th Cir. 1998) (agreement among governors to allow Illinois to keep death-sentenced inmate was

---

2. The decisions of the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

valid, and inmate "had no legally protectable rights under the IAD in the place where he would serve his sentence"); *Derengowski v. U.S. Marshal, Minneapolis Office*, 377 F.2d 223, 224 (8th Cir. 1967); *Brown v. State*, 920 So. 2d 1037 (Miss. App. 2005) ("Brown lacks standing to contest the validity of the extradition agreements between the sovereign states of Tennessee and Mississippi."); *Grayson v. Wain-wright*, 330 So. 2d 461, 463 (Fla. 1976) (inmate lacked standing to contest "agreement between two sovereigns concerning the…exchange of custody of the prisoner"). Accordingly, Frazier has no cognizable right to inject himself into the custody arrangement reached between the States of Alabama and Michigan, and his petition is due to be dismissed.[3]

---

3. Frazier has also received due process. He was lawfully convicted of a crime and sentenced to death. And, as explained above, he has no legal interest in serving out one sentence before the other, *see also Kirby v. Siegelman*, 195 F.3d 1285, 1290-91 (11th Cir. 1999), though his claim would fail even if he did. The doctrine of procedural due process acts as a prophylactic for certain state-created rights by, e.g., requiring a hearing before the state acts. *See Sandin v. Conner*, 515 U.S. 472, 477-78 (1995); *Wolff v. McDonnell*, 418 U.S. 539, 558, 564-66 (1974). So, for instance, the clause might require a hearing before an inmate is transferred, but Frazier wants something entirely different. He claims state law barred the transfer altogether, no matter what pre-transfer process he received. And he wants the federal courts to enforce those state laws with an injunction forbidding Alabama from ever executing him, but federal courts may not enforce state laws in this manner. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Frazier's sole authority, *Olim v. Wakinekona*, did not hold otherwise; there, as here, the state officials exercised "discretion to transfer [the] inmate," and the Supreme Court did not "doubt[] the ability or authority of the [state courts] to construe state law." 461 U.S. 238, 249-50 & n.10 (1983); *see also id.* at 250-51 ("The State may choose to require [additional] procedures…, but in making that choice, the State does not create an independent substantive right." (footnote omitted));

## IV.    Executive Agreements Are a Valid Alternative to the IAD.

Frazier's petition is meritless because the use of executive agreements to transfer inmates between states is a valid alternative to the use of the Interstate Agreement on Detainers (IAD).

The IAD is an interstate compact adopted by the United States, the District of Columbia, and forty-eight states, *see* 18 U.S.C. App'x 2, including Alabama and Michigan. ALA. CODE § 15-9-81; MICH. COMP. LAWS § 780.601. Its purpose is to "provide cooperative procedures" to "encourage the expeditious and orderly disposition of" charges pending against inmates in other states and the "determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." 18 U.S.C. App'x 2 § 2, art. 1. IAD claims are not cognizable in federal habeas. *E.g.*, *Remeta*, 85 F.3d at 519; *Browning v. Foltz*, 837 F.2d 276, 283 (6th Cir. 1988).

But the IAD does not adequately cover every situation concerning the custody of inmates with charges or convictions in multiple states. The Extradition Clause, U.S. CONST. art. IV, § 2, cl. 2 provides:

---

*Montanye v. Haymes*, 427 U.S. 236, 243 (1976) ("We also agree with the State of New York that under the law of that State Haymes had no right to remain at any particular prison facility and no justifiable expectation that he would not be transferred unless found guilty of misconduct.... The statute imposes no conditions on the discretionary power to transfer, and we are advised by the State that no such requirements have been promulgated."). Put simply, not every state law creates a federally protected interest; Frazier must show more.

A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

The Extradition Clause was implemented by 18 U.S.C. § 3182:

Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District, or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District, or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

Moreover, 4 U.S.C. § 112(a), added to the Code in 1949, gives the States the right to "enter into agreements or compacts for cooperative effort and mutual assistance in the prevention of crime and in the enforcement of their respective criminal laws and policies, and to establish such agencies, joint or otherwise, as they may deem desirable for making effective such agreements and compacts."

Courts have upheld the use of executive agreements between state governors to transfer inmates with charges or convictions in multiple jurisdictions. An illustrative example is *Pitsonbarger v. Gramley*, 141 F.3d 728 (7th Cir. 1998), in which the inmate was convicted of felonies in Illinois, Missouri, and Nevada and sentenced to

24

death in Illinois. The governors of the three states enacted an executive agreement

to keep the inmate in Illinois so that he could be executed, which concluded:

> IT IS ALSO AGREED that if Jimmy Pitsonbarger receives any sentence providing less than death in Missouri and the death sentence in Illinois is vacated, commuted, or otherwise permanently eliminated, he will be returned to Nevada to serve his life without possibility of parole. If one death sentence remains in effect, Jimmy Pitsonbarger will be housed in whatever state has said sentence in effect.

*Pitsonbarger v. Gramley*, 103 F.3d 1293, 1300 (7th Cir. 1996); *see Pitsonbarger*,

141 F.3d at 733. In 1995, the inmate filed a § 2254 petition alleging in relevant part

that the IAD mandated his return to Nevada after his Illinois trial. *Pitsonbarger*, 141

F.3d at 734. The Seventh Circuit rejected this claim, noting that the governors' executive agreement was valid:

> Only two possibilities exist: either the Governors were free to enter into their Executive Agreement, because it was not a "combination tending to the increase of political power in the States" that might encroach on national sovereignty…or the Executive Agreement, like the IAD, is an interstate compact. We need not decide which of those possibilities is the correct one here. If the Executive Agreement does not fall within the Compact Clause, then the three Governors were free to enter into it, and its terms govern Pitsonbarger's case. If it does fall within the Compact Clause, then it just as clearly benefits from the advance congressional consent given in the Crime Control Consent Act of 1934 as the IAD itself. It provides for a cooperative effort and mutual assistance in the enforcement of the three states' criminal laws and policies, and thus falls squarely within the scope of 4 U.S.C. § 112(a).

*Pitsonbarger*, 103 F.3d at 1301; *see Pitsonbarger*, 141 F.3d at 734 (affirming prior

rejection of claim).

25

What *Pitsonbarger* shows is that an executive agreement between governors may override the IAD, even if the inmate was initially transferred pursuant to the IAD. Such an executive agreement may be used to circumvent the IAD's requirement that the inmate be returned to the sending state—useful in a case like Frazier's in which one state has sentenced the inmate to death. And while Frazier claims that "Alabama law provides no authority for the Governor of Alabama to obtain physical custody of a prisoner as was done via the Executive Agreement," DE1:13, he points to no Alabama law *prohibiting* such agreements, which Congress otherwise permits.[4] Therefore, the petition is due to be dismissed.

## V.    The Doctrine of Laches Counsels Dismissal.

The petition is also due to be dismissed due to laches.

"The doctrine of laches…protects against unreasonable delay in filing suit." *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366, 373 (2024). Laches is an equitable defense requiring "proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v.*

---

4. And because the Governor of Alabama is neither required nor prohibited to enter into such agreements, they represent the exercise of a highly discretionary power for which she would have sovereign immunity. *See, e.g.*, *Seminole Tribe of Fla. v. Florida*, 11 F.3d 1016, 1028 (11th Cir. 1994), *aff'd*, 517 U.S. 44 (1996). Such immunity would be greatly diminished, however, if it could be easily sidestepped by pleading the same alleged injury as a collateral attack in habeas, which bolsters the conclusion that this is "not a matter for federal habeas review." *Remeta*, 85 F.3d at 519.

*United States*, 265 U.S. 265, 282 (1961). The Middle District of Alabama[5] has framed this as a tripartite proof: "the defendant must show that the plaintiff delayed in asserting his claim, the delay was inexcusable, and the delay caused undue prejudice to the defendant." *Grayson v. Allen*, 499 F. Supp. 2d 1228, 1236 (M.D. Ala. 2007). While laches is not contemplated in the § 2254 Rules, laches is an affirmative defense pursuant to Rule 8(c)(1) of the Federal Rules of Civil Procedure.

Both the Middle District and the Eleventh Circuit have recognized the applicability of the laches defense in capital § 1983 actions, even in motions for stay of execution. *E.g.*, *Grayson v. Dunn*, 156 F. Supp. 3d 1340, 1351-56 (M.D. Ala. Dec. 22, 2015), *aff'd*, *Brooks v. Warden*, 810 F.3d 812 (11th Cir. 2016); *see also Ledford v. Comm'r, Ga. Dep't of Corr.*, No. 17-12167, 2017 WL 2104682, at *6-7 (11th Cir. May 16, 2017) (denying stay of execution after considering relative harm to parties, likelihood of success on merits, and inmate's untimeliness). Moreover, in *Hill v. McDonough*, the Supreme Court noted that a number of federal courts "have invoked their equitable powers to dismiss [§ 1983] suits they saw as speculative or filed too late in the day." 547 U.S. 573, 584 (2006) (citing *Hicks v. Taft*, 431 F.3d 916 (6th Cir. 2005); *White v. Johnson*, 429 F.3d 572 (5th Cir. 2005); *Boyd v. Beck*, 404 F. Supp. 2d 879 (E.D.N.C. 2005)); *see also Hallford v. Allen*, 576 F.3d 1221 (11th Cir.

---

5. Much of Alabama's execution litigation occurs in the Middle District, particularly § 1983 challenges to the execution protocol. As noted above, Frazier also has a § 1983 action currently pending in the Middle District.

2009) (dismissal on laches); *Williams v. Allen*, 496 F.3d 1210 (11th Cir. 2007) (dismissal on laches); *Grayson v. Allen*, 491 F.3d 1318 (11th Cir. 2007) (dismissal on laches); *Rutherford v. Crosby*, 438 F.3d 1087, 1091-92 (11th Cir. 2006), *rev'd on other grounds*, *Rutherford v. McDonough*, 547 U.S. 1204 (2006). Indeed, the Supreme Court has held that "federal courts can and should protect States from dilatory or speculative suits[.]" *Hill v. McDonough*, 547 U.S. 573, 585 (2006).

All of the elements of the laches defense are present in this case. Frazier has known since October 2011 that he was being transferred from Michigan to Alabama. He informed his counsel of such on October 31, 2011. DE1:7. If he believed the executive agreement authorizing the transfer were illegal, he could have challenged it at that time. He did not.

The State of Alabama moved for Frazier's execution in September 2014. He could have challenged the executive agreement then once it was evident that Alabama intended to carry out his sentence. He did not.

Frazier initiated a § 1983 action in this Court in July 2018 concerning the executive agreement, claiming that it violated his equal protection rights. He could have argued at that time that the executive agreement was illegal, or he could have raised this in a state action. He did not.

Frazier filed a successive § 2254 petition in the Northern District in November 2018, which concluded in February 2020. He could have filed a petition about the

executive agreement at that time, or he could have filed one in the nearly five years that followed. He did not.

Frazier could have initiated this litigation in August 2023, when the State announced the execution protocol that would apply to him, or in October 2024, when the State moved for his execution. He could have initiated it in November 2024, when he began § 1983 proceedings in the Middle District. He could have initiated it in December 2024 after Governor Whitmer declined to join his team. He did not.

Instead, Frazier waited until January 16—three weeks from his execution, two months after telling Governor Whitmer of his intent to file a § 2241 petition, and with an evidentiary hearing scheduled in his § 1983 action—to argue that the 2011 executive agreement was illegal and void. He chose to wait, knowing it would force counsel for Respondents in *two* states and the federal judiciary to scramble to decide his case on a highly compressed execution timeline. He chose to wait, hoping that *this* might be the litigation that gets bogged down in the Eleventh Circuit or keeps the Supreme Court from allowing the State of Alabama to proceed with his lawful execution before the expiration of the death warrant.

There is no excuse for Frazier's delay and no explanation for it other than gamesmanship. His dilatory filing "'leaves little doubt that the real purpose behind his claim is to seek a delay of his execution[.]'" *Jones v. Allen*, 485 F.3d 635, 640 (11th Cir. 2007) (quoting *Harris v. Johnson*, 376 F.3d 414, 418 (5th Cir. 2004)).

29

As for the third element of the laches defense, undue prejudice to the State, it is well settled that the State and victims' families have a recognized interest in the timely implementation of death sentences. *See Williams*, 496 F.3d at 1214; *Grayson*, 491 F.3d at 1326; *Jones*, 485 F.3d at 641. "To unsettle these expectations" that executions can be carried out in a timely fashion "is to inflict a profound injury to the powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike." *Calderon v. Thompson*, 523 U.S 538, 556 (1998) (internal citation and quotation omitted).

Moreover, the State of Alabama is unduly prejudiced by Frazier's delay from a litigation standpoint, as the State must now simultaneously defend against his federal actions in two courts while the cases are proceeding on highly expedited timelines. The State anticipates being before the Eleventh Circuit and the Supreme Court in both of Frazier's last-minute execution challenges, and as Frazier is scheduled to be executed fifteen days from this filing, those appeals will necessarily be rushed. That Frazier waited until November 2024 to challenge the State's August 2023 execution protocol in the Middle District is questionable; that he waited until January 2025 to challenge his October 2011 transfer to Alabama is a blatant misuse of this Court to stop his execution.

Therefore, Frazier's petition should be dismissed due to his untimely and prejudicial delay in filing.

## VI.    Law and Justice Do Not Require Relief.

Even if the petition survives all the hurdles above, this Court should exercise its equitable discretion to deny the writ. As the Supreme Court recently reiterated, habeas has always been a discretionary remedy. *See Davenport*, 596 U.S. at 127-28. Thus, "even if a prisoner overcomes all of [AEDPA's] limits, he is never entitled to habeas relief." *Shinn v. Ramirez*, 596 U.S. 366, 377 (2022). He "must still today persuade a federal habeas court that 'law and justice require' relief." *Davenport*, 596 U.S. at 134 (quoting 28 U.S.C. § 2243); *see id.* at 128.

Applying the law-and-justice standard, the Court should deny relief where, as here, the petitioner does not dispute his guilt for capital murder. *See Crawford v. Cain*, 68 F.4th 273, 287-88 (5th Cir.), *reh'g en banc granted, op. vacated*, 72 F.4th 109 (5th Cir. 2023), *reh'g en banc*, 122 F.4th 158 (5th Cir. 2024). For one, the "[f]oremost" consideration informing "the scope of the writ" is the "powerful and legitimate interest in punishing the guilty." *Davenport*, 596 U.S. at 132. An unpunished murder is an intrinsic and ongoing harm to the victims, the public, and the rule of law. "Only with real finality" can we "move forward knowing the moral judgment will be carried out." *Calderon*, 523 U.S. at 556. "To unsettle these expectations is to inflict a profound injury to…an interest shared by the State and the victims of crime alike." *Id.* It is undoubtedly relevant to what "law and justice require" (28 U.S.C. § 2243) that federal review "intrudes on state sovereignty" in that way. *Harrington*

31

*v. Richter*, 562 U.S. 86, 103 (2011) (cleaned up); *see also Danforth v. Minnesota*, 552 U.S. 264, 280 (2008); *Hill*, 547 U.S. at 584 (citing the "strong interest" against "undue interference from the federal courts"). And with the writ generally being unavailable "to challenge a judgment of guilt" for the first five hundred years of its existence, *Crawford*, 68 F.4th at 287, the factual innocence requirement helps "return[] the Great Writ closer to its historic office," *Davenport*, 596 U.S. at 132. Last, requiring factual innocence conserves judicial resources and benefits those truly needing the writ. *See Crawford*, 68 F.4th at 287-88.

In this case, there is no risk of punishing an innocent man—not even a shadow of doubt—so "law and justice" do not demand relief. Frazier's petition does not contest his guilt for capital murder in Alabama. For that reason alone, justice demands denial of his petition.

It would be especially unjust to grant relief in this case because Frazier's claim, at bottom, demands a reward for murdering in two jurisdictions rather than one. Which State punishes Frazier is a question to be resolved between the two State sovereigns, each with interests in seeing justice done for Frazier's crimes, and those two States agree that Frazier should remain in Alabama. Respecting their decision is what justice requires, not conferring a windfall on Frazier because he murdered again after fleeing Alabama.

## CONCLUSION

Demetrius Frazier committed despicable acts in two states. In 2011, the governors of Alabama and Michigan agreed that Alabama should be allowed to carry out his death sentence and shipped him to Atmore to await his execution. His present § 2041 petition is untimely and procedurally defaulted, Frazier lacks a cognizable right to choose which sentence he serves first, and his claim is altogether meritless. This Court should therefore dismiss the petition.

<div style="margin-left:50%">

Respectfully submitted,
Steve Marshall
*Attorney General*

**/s/ Lauren A. Simpson**
Lauren A. Simpson
*Deputy Attorney General*

Counsel for Respondent Raybon

</div>

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 22, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

I further certify that I sent a copy of the foregoing by email to counsel for Respondent Washington:

Scott Shimkus
shimkuss@michigan.gov

**/s/ Lauren A. Simpson**
Lauren A. Simpson
*Deputy Attorney General*

Counsel for Respondent Raybon

ADDRESS OF COUNSEL:

Office of the Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, Alabama 36130
(334) 242-7300
Lauren.Simpson@AlabamaAG.gov

34